UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at COVINGTON

Eastern District of Kentucky
FILED
SEP 2 4 2009
AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 04-212-DLB

729, INC., ET AL.                                                    PLAINTIFFS

vs.                    **MEMORANDUM OPINION**

KENTON COUNTY FISCAL COURT                                           DEFENDANT

\* \* \* \* \*

This action, brought under 42 U.S.C. § 1983, presented constitutional challenges to Kenton County's adult entertainment licensing ordinance. The Plaintiffs and the County both moved for summary judgment, which this Court granted to the County. Plaintiffs presented four specific constitutional issues on appeal. See *729, Inc. v. Kenton County Fiscal Court*, 515 F.3d 485, 489 (6th Cir. 2008). The Court of Appeals ultimately affirmed this Court with respect to three of the four challenges presented and vacated and remanded the fourth issue for further proceedings. *Id.*

On remand, this Court allowed for a period of discovery. The parties then filed supplemental briefings on the sole issue of licensing fees. (Docs. #73, #74). The constitutionality of the licensing fee has been fully briefed and is now ripe for review. *Id.* In their supplemental filings, Plaintiffs argue Kenton County's licensing fee is excessive and content-based in violation of the First Amendment; the County asserts the fees are a constitutionally permissible means of combating negative secondary effects. (Docs. #77, #78). For the reasons set forth below, this Court finds that the licensing fees required under the Kenton County ordinance do not deter First Amendment rights, are narrowly

tailored to advance the County's interest, are reasonably related to the expenses incident to administration, and are therefore constitutionally permissible.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 17, 2004, the Kenton County Fiscal Court (hereinafter "Kenton County" or the "County") adopted Ordinance No. 451.7 (hereinafter "Ordinance"), directed to the licensing and regulation of adult businesses in Kenton County. Ordinance No. 451.7 sought to define the scope of adult businesses and entertainers to whom the ordinance applied; to set up a program for the application and issuance of licenses to operate or to be employed in such regulated business activities; to set parameters for how, where, and when sexually oriented entertainment activities could occur; and to provide a process for inspection and enforcement of the Ordinance provisions, through point assessments with progressive license penalties and/or misdemeanor criminal charges for violations.

Among other types of sexually oriented businesses, Ordinance 451.12 regulates cabarets and sexually oriented theaters providing sexually oriented entertainment, defined as activities of dancing, singing, talking, modeling, gymnastics, acting, other forms of performing, or individual conversations with customers for which some type of remuneration is received, when performed by a sexually oriented entertainer at a sexually oriented business. A sexually oriented entertainer is one who appears in a state of semi-nudity at a business subject to the Ordinance.

Sexually oriented businesses are required to obtain a business license to operate. Sexually oriented entertainers and managers of sexually oriented businesses must also obtain a license in order to provide services in or for a sexually oriented business covered by the Ordinance. The business license fee is $3,000 annually, fifty percent of which is

2

refunded if an application is denied. License fees for managers and entertainers are $155 annually, none of which is refundable.

Application forms with the required information for either a business or an entertainer's or manager's license are submitted to the County License Inspector. Provided an applicant satisfies the background requirements and submits a complete and accurate application with required fees, and provided that additional premises-related requirements for businesses have also been satisfied, the License Inspector is to issue a license to the individual or business.

The Ordinance provides a mechanism for reconsideration. If the License Inspector denies a license, the applicant can make a timely request for a hearing and reconsideration. The Hearing Officer–appointed by the Kenton County Fiscal Court–must conduct the hearing and render a decision within thirty days. The hearing is conducted in accordance with state statute. Rather than request a hearing, an applicant may seek immediate judicial review as provided by law, or can opt to request judicial review after a Hearing Officer has reconsidered the application.

Following adoption of the Ordinance, four adult entertainment establishments within Kenton County and three employees of these clubs filed an action challenging the constitutionality of the Ordinance.[1] Plaintiffs enumerated more than ten separate constitutional claims in their initial action. (Doc. #53, at 2-4). After both sides moved for summary judgment, this Court granted judgment in the County's favor.

---

[1] The named Plaintiff club establishments are 729, Inc., d/b/a Rodney's; Foxx Restaurants, Inc., d/b/a Viva LaFoxx; Foster, Inc., d/b/a The Pad; and The Venus Lounge, Inc., d/b/a Club Venus. The individual Plaintiff entertainers are Patsy Hiatt and Tina Sturgeon, employed with club Venus, and Wanda Blankenship, employed with Viva LaFoxx.

3

On appeal to the Sixth Circuit Court of Appeals, Plaintiffs argued that: (1) the Ordinance's "commingling provision" violated the First Amendment because it bars entertainers access to areas of an adult establishment occupied by customers within one hour of the entertainers' performing semi-nude on stage; (2) the Ordinance violated Plaintiffs' rights under the Contracts Clause of Article 1, § 10 of the Constitution; (3) the Ordinance's judicial review provisions do not satisfy the First Amendment's prompt judicial review requirements; and finally, (4) the Ordinance's licensing fees are excessive, content-based taxes that violate the First Amendment. The Court of Appeals affirmed this Court's grant of summary judgment on the first three constitutional challenges, but vacated and remanded for further proceedings with respect to the fourth challenge.

## II.  ANALYSIS

The Sixth Circuit expressly instructed this Court on remand to determine: (1) whether the measures associated with the fee's amount are a narrowly tailored means of advancing the County's interests; (2) whether the County's cost estimates for those narrowly tailored measures are reasonable; and (3) whether the fee's total amount will deter the exercise of First Amendment rights. *729, Inc.*, 515 F.2d at 505. Supplemental briefing demonstrates there is now sufficient record evidence to address these questions.

The Supreme Court instructs that an ordinance imposing a license and fee requirement before the expression of constitutionally protected activity, although a prior restraint, is permissible provided the measures used and costs passed on to licensees are "narrowly tailored to serve [the] significant governmental interest" in combating secondary effects. *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130 (1992); *see also 729, Inc.*, 515 F.3d at 501. Here, curbing the secondary effect of prostitution is the asserted

4

governmental interest sought to be served through the County's licensing scheme. The Sixth Circuit explicitly stated that "[t]he record demonstrates quite clearly that the County sought to target prostitution." *729, Inc.*, 515 F.3d at 491.

At issue is whether the measures imposed on licensees and the costs thereof are narrowly tailored to combat this negative secondary effect. The County adopted a licensing program that requires police enforcement of the Ordinance, administration and inspection on the part of the Kenton County License Inspector, and background checks for license issuance. The County chose these measures to combat negative secondary effects of sexually oriented businesses. The measures are funded through the licensing scheme devised under the Kenton County Ordinance.

As part of its supplemental discovery on remand, the County deposed Captain Neal Nally of the Covington Police Department. Captain Nally described the details of administering licenses, including the process necessary to conduct background checks on applicants as well as the surveillance needed to appropriately police the Ordinance. Captain Nally made clear that undercover investigations are the most effective way to police and enforce the County's interest in combating negative secondary effects; otherwise, uniformed officers serve as a distinct warning to all adult entertainment employees to cease any illegal activity.[2] Without an undercover operation, then, the County License Inspector would be limited to inspecting adult businesses for simple ordinance violations such as lighting violations or improper display of licenses. Plaintiffs on remand offer no

---

[2] "[T]o catch acts of prostitution, things like that, that'd be very difficult for somebody in uniform to be able to do that just because of the...barmaid, [or] whoever might be there tipping off the other people in the bar by flashing the lights or turning the music up or down or off to alert the others. So, really, a uniformed officer is only going to be able to check for licensing violations." (Nally Depo. at 16-17).

5

supplemental discovery or other proof to counter the County's observations and reasoning. Because the investigation of an adult business by a uniformed officer would subvert the County's recognized interest in combating prostitution, undercover investigations are a narrowly tailored means of advancing that interest.

The unique mandate of the Ordinance further warrants the administrative measures employed by the County to combat negative secondary effects. The Sixth Circuit has already upheld the constitutionality of the Ordinance's commingling provision, which bars entertainers from entering areas occupied by customers within one hour of the entertainers' performing semi-nude on stage. *729, Inc.*, 515 F.3d at 493. It is this provision—and others like it—that make the administration of the Kenton County Ordinance unique. The County's License Inspector must inspect all adult establishments regularly to ensure compliance with specific Ordinance provisions that, on the one hand work to protect First Amendment expression, and on the other hand also work to protect against illegal activity often associated with adult entertainment. The purpose of the Ordinance therefore dictates more frequent and rigorous inspections than those of businesses not involved in the adult entertainment industry.

Background checks are also necessary to the County's licensing regime. Performing criminal background checks on owners, managers, and entertainers allows the County to further investigate the likelihood of criminal activity associated with adult entertainment. The administration of Kenton County's Ordinance and the subsequent background checks conducted on licensees are measures narrowly tailored to enforce the overall mandate of the Ordinance.

In addition to narrowly tailored measures that advance the County's interest, the cost

of those measures must also be reasonable and narrowly tailored. As the Sixth Circuit noted, *Murdock* found fixed licensing fees unconstitutional where the fee forced a licensee to "bear more than the costs they would impose." *Id.* at 502. A licensing fee, however, is not considered excessive provided it is "reasonably related to the expenses incident to the administration of the ordinance." *Northeast Ohio Coalition for the Homeless v. Cleveland*, 105 F.3d 1107, 1110 (6th Cir. 1997). It is the Government that carries the burden of establishing the reasonableness of the Ordinance's licensing fee.

After additional discovery, Kenton County submitted for this Court's review a detailed calculation of its cost estimates concerning Ordinance administration and enforcement. In addition to the deposition of Captain Nally, the County also deposed Robert Reinecke, an accountant who has worked for the City of Covington for the last twenty-four years. Mr. Reinecke works for the City's Finance Department, which is responsible for budgeting the salaries and benefits of Covington police officers. He supplemented Captain Nally's testimony about the cost of conducting background checks on applicants as well as the cost of an undercover investigation by providing pertinent information regarding the hourly rate of pay for a Covington police officer.

Mr. Reinecke testified that a Grade 4 police officer earns an hourly wage of $39.92.[3] Consistent with Mr. Reinecke's wage calculation, Captain Nally testified $199.60 in personnel expenses are incurred to conduct one background check. This figure was determined using the number of hours it takes to conduct a background check multiplied

---

[3] The hourly rate was calculated at Grade 4 because Captain Nally testified that "a vast majority of the officers have between five and ten years on the department so everybody would be at least a Grade 4." (Nally Depo., at 20). According to Capt. Nally, a police officer reaches "Grade 4 status after five years...Grade 5 status after ten years." *Id.* at 15-16.

by the rate of pay per hour for an officer to conduct the search.[4] Thus, on background checks alone the County will spend an estimated $45,000 annually given that the County will receive approximately 225 individual applications from entertainers and managers and 4 applications from the adult businesses operating in Kenton County.[5]

Additionally, the County calculated it would cost a minimum of $1,836.32 per week to operate a standard undercover investigation run by the Covington Police Department. This was based on Captain Nally's testimony that it would take at least "two officers working in [an undercover situation] because an undercover officer obviously can't carry a radio, he can't have a bulletproof vest on...carry a gun...for fear of compromising the investigation." (Doc. #73-2 at 21-22). To avoid detection, undercover officers would also be expected to patronize an establishment with dancers and managers to avoid detection for a minimum of three to four visits a week for "three hours a night for each [officer]...before the could legitimately build a rapport." *Id.* at 26- 27. From there, each officer would be expected to a write a report containing his observations, with a supervisor that oversees each operation.[6] Notably, the County's estimate does not include the cost of paying a police officer working an investigation above the Grade 4 pay level, nor does it include estimates for multiple investigations or investigations that extend beyond one week. The estimate for

---

[4]Five hours (to conduct a background check) x $39.92 (pay for a Grade 4 level officer )= $199.60.

[5]The County asserts that there are four adult businesses in Kenton County, while Captain Nally's deposition indicates there were five during his involvement enforcing the Ordinance from 2001-2004. Even if we change the calculation to include one more license fee of $3000 annually, the operating costs for the County to enforce the ordinance would still fall far short of what the County charges as a licensing fee. Calculation: 225 entertainers x $155 = $34,875, plus $15,000 (5 businesses x $3000) = $49,875.

[6]The $1,836.32 figure was reached by adding up the weekly cost for two Grade 4 officers in one establishment as well as the cost for two other officers on detail to respond to those undercover officers $398.28 (for three hours, three nights a week) added to the amount of $399.20 for supervisory costs (The County proffered evidence that a supervisory officer would spend at least 10 hours a week supervising the operation, multiplied by $39.92 [the pay of a Grade 4 officer]).

8

undercover investigations, therefore, is appropriately conservative.

In addition to undercover investigations and background checks, the County must expend resources for license issuance and regular inspections by the County License Inspector. Plaintiffs, in their filings, challenged the speculative nature of the estimated costs spent on the License Inspector's duties, arguing the County failed to provide additional information that sufficiently quantified the number of hours County employees would be required to spend conducting inspections, attending hearings, and "listening to general questions and complaints." (Doc. #73, at 3). In 2005, Roswald Richardson, who was then Kenton County and Covington's License Inspector, was deposed and testified to the costs associated with administering and enforcing the Kenton County Ordinance. In its supplemental briefings to the Court, the County summarized Mr. Richardson's calculations and used his estimates to determine the annual expense of administering and enforcing the Ordinance.

The County has not produced additional evidence concerning the costs associated with the License Inspector's duties and, therefore, this Court finds it appropriate to redact the speculative costs included in Mr. Richardson's estimate. Because the up-front costs articulated by the License Inspector for the first year of administration were too speculative, that $17,437.55 figure is excised from Mr. Richardson's estimate. This number included the one-time fee of $15,000 for a computer database customized to help enforce the Ordinance. The County has not proffered any evidence with respect to the need for such a system.

Mr. Richardson then testified that each subsequent year would require $15,271.08 in costs and expenses. Although more reasonable than the $32,654.63 estimate given for

9

the first year of operation, this figure is still fraught with speculative expenses. This Court is content to utilize an annual figure of $10,857.55 in costs to the County associated with the License Inspector, rather than Mr. Richardson's $15,271.08 figure that included unsubstantiated "other costs," such as "time spent by the License Inspector's Office dealing with general questions and complaints, [and] time spent coordinating with other departments in Kenton County."[7] Using the cost estimates articulated by Mr. Richardson—as reduced by this court—the yearly expense of the County will still far exceed any amount of income it could generate from the licensing fees charged to adult businesses, mangers, and entertainers. From the above figures, the County demonstrated that in a given year, to enforce the Ordinance the County would operate at a loss of several thousand dollars even if it obtained the license fees from 225 entertainers and each of the four adult business in Kenton County.[8]

Lastly, Plaintiffs contend that the $3,000 licensing fee for adult businesses is

---

[7]The $10,857.55 figure relied on by this Court was calculated using Mr. Richardson's testimony as to the annual costs the County would incur in employing a License Inspector. That is, any given License Inspector would have to process and review 235 applications at a conservative estimate of $21.09 for an annual total of $4,956.15. (Richardson Depo., at 11). Additionally, the County would have to pay for the costs associated with attending hearings and assessing points for Ordinance violations, based on an hourly wage of $36.93 multiplied by 40 hours per year, totaling $1,477.20. The License Inspector will also have to conduct inspections of each business for regulatory compliance checks. Mr. Richardson testified to a conservative estimate of 40 hours per year for regular inspections and, when multiplied by the wage of $36.93 this totals $1,477.20 annually. Lastly, this Court found the calculation for equipment and supplies associated with issuing licenses sufficiently definite and therefore calculated another $2,947 annually for such supplies. *Id.* at 15.

[8]Calculation: 225 entertainers x $155 = $34,875, plus $15,000 (5 businesses x $3000) = $49,875. Whereas the County will spend approximately $57,693.77 annually to administer and enforce the Kenton County Ordinance ($200 per background check x 225 entertainers = $45,000, plus $1,836.32 for a one-week undercover investigation, plus $10,857.55 for the License Inspector to administer and inspect = $57,693.87).

excessive compared to the $155 the City of Covington charges for adult business licenses.[9] While Plaintiffs point to this lower fee, they provided no evidence other than this fact. In other words, there is no evidence this fee reflects actual expenses incurred by Covington for administration and enforcement of its Sexually Oriented Business Ordinance. Based on the estimates placed before this Court, a $155 fee for licensing would be insufficient to cover all of the City's administrative costs; Captain Nally has already testified it would cost approximately $199.60 in personnel expenses to conduct one background check necessary for the license, free of any further administrative or enforcement costs. Moreover, Captain Nally testified that the City had to purchase and maintain an ID machine at a cost of roughly $10,000 in order to issue each license: an expense to the City obviously not reflected in the $155 licensing fee charged to adult businesses. There has been no evidence that the $155 Covington fee actually reflects the costs incident to administration of the license; therefore, the comparison between Covington and Kenton County's licensing fee is immaterial. Furthermore, the City of Covington is well within its municipal discretion to charge a fee well below the actual costs needed to administer the license to adult businesses.

The County has met its burden of proof, as the above proffered calculations sufficiently detail the reasonableness of Kenton County's $3,000 licensing fee for adult businesses. The Court therefore finds that the licensing fee charged is not excessive in that it is "reasonably related to the expenses incident to the administration of the ordinance." *Northeast Ohio Coalition*, 105 F.3d at 1110 (quoting *Stonewall Union v. Columbus* 931 F.2d

---

[9]Plaintiffs stated in their supplemental briefings that the license fee charged by the City of Covington was $155 (Doc. #73 at 4 n. 1), but in their reply brief they assert Covington's licensing fee was $150 (Doc #77 at 3, 5). To reconcile the difference in amount, this Court relies on Captain Nally's testimony that the licensing fee for the City of Covington was $155.

11

1130, 1136 (6th Cir. 1991).

The Court of Appeals observed that "the costs incorporated by the County will be paid only once or will decrease substantially in amount by the second year" and as such the County's licensing scheme may not remain "narrowly tailored" from one year to the next. See 729, Inc., 515 F.3d at 504. Although such a decrease in subsequent annual fees is relevant to the inquiry of whether the fee is narrowly tailored, it is noteworthy that the County's cost estimates no longer include, for example, the speculative "one-time" $15,000 expense for purchase of database software customized to serve the specific licensing regime in Kenton County. The County's annual cost estimate as presented in its supplemental briefing was based exclusively on the cost of background checks, expenses paid to the License Inspector for purposes of license administration, and the estimated cost of undercover investigations to combat negative secondary effects related to sexually oriented businesses.

Although not addressed by either party in their supplemental briefings, the issue of license denial deserves comment. When a business applicant is denied a license, the County retains $1,500 of the $3,000 fee paid by the establishment. The issue, then, is whether retention of this amount is reasonable and whether it is narrowly tailored to the governmental interest of curbing negative secondary effects. The Court of Appeals stated that the amount retained "must reflect only the costs the County incurs in the license denial." Id. at 505. Although retention of $1,500 is arguably reasonable depending, for instance, on the number of background checks that were necessary in conjunction with processing an application, the retention as a whole is not narrowly tailored to curbing secondary effects. For instance, even if the County had to conduct background checks for

a business that had five corporate officers (which may be a high estimate), the County would retain $500 more than is necessary to deny the license based on the County's own calculations. Even if the County issued a license for an adult establishment where the $1,500 was justified, the possibility that the amount retained "*might* far exceed the costs of processing and denying those applications" is constitutionally impermissible. *Id.* (emphasis added). As a result, this Court concludes that the retention fee is untenable as adopted. In the event the County denies a license to an adult establishment, the County is permitted to retain only the cost of administration and denial, not to exceed $1,500. However, retention of the $155 license fee for managers and entertainers does not run afoul of the First Amendment, as that amount reflects only the costs incurred to conduct a background check on the applicant.

Finally, the Supreme Court has found that imposition of a licensing fee still runs the risk of deterring constitutionally protected speech even if each of the individual expenses assessed reflect a narrowly tailored means of advancing the government's interest of combating negative secondary effects if the total amount will deter the exercise of First Amendment rights. *Forsyth County*, 505 U.S. at 134.

Plaintiffs argue the Ordinance is so excessive it runs afoul of the First Amendment and deters constitutionally protected speech. They submit the excessiveness of the license fee is directed at a disfavored business as an effort to encourage their closure and consequently their expression of protected speech. Although the Ordinance is not content-neutral, the Court of Appeals has already concluded that the differential treatment given an adult business in the form of licensing fees is permissible provided the "differential treatment is justified...by the peculiar 'secondary effects' associated with adult businesses." *729, Inc.*,

13

515 F.3d at 504.

The decision in *Bright Lights* is particularly instructive here. *Bright Lights v. Newport*, 830 F. Supp. 378 (E.D. Ky. 1993). There, the City of Newport imposed a $5,000 licensing fee on all adult entertainment establishments, the stated purpose of which was to combat prostitution. *Id.* at 386. The plaintiffs in *Bright Lights* argued that the fee worked to impermissibly tax First Amendment expression. Disagreeing, the district court found the fee constitutionally valid as it was devised precisely to meet the expenses of the City's additional policing measures. *Id.* at 385-86.

Although the licensing fee in *Bright Lights* was held constitutional, Plaintiffs assert there is no evidence of how speech in Newport fared after the fee was imposed, which Plaintiffs argue is the critical inquiry for this Court based on Justice Kennedy's concurring opinion in *Los Angeles v. Alameda Books*. 535 U.S. 425, 444-53 (2002). Even if we accept Plaintiffs' assessment that the critical inquiry is how speech fared after imposition of the fee, Plaintiffs rely solely on a report conducted by the County's experts that "as of 2003 there were only three adult cabarets in operation in Newport, while there were six in Covington, which imposes a more modest $150 license fee." (Doc. #77, at 3). From these facts Plaintiffs conclude that because a majority of businesses operate in a jurisdiction with a lower licensing fee "it is a fair assumption that the $5,000 fee charged by Newport deters businesses from operating there." *Id.* Again, Plaintiffs have not proffered any evidence that the City's licensing fee functioned as a deterrent, prompting adult entertainment businesses to relocate to Covington. Moreover, Kenton County's licensing fee is two-thirds less than the fee at issue in *Bright Lights*. Therefore, even if Plaintiffs proffered evidence that directly linked the relocation of businesses to Covington because Newport imposed a $5,000 fee,

the Kenton County licensing fee is not justifiably analogous.

In support of their argument that the $3,000 licensing fee for businesses unconstitutionally deters the exercise of First Amendment rights, Plaintiffs submitted to this Court the affidavit of Bruce Lagory, the present owner of an adult cabaret in Covington, Kentucky. (Doc. #73-4). In his affidavit, Mr. Lagory refers to conversations he had with other adult business owners in Kenton County who expressed to him that since the County adopted its Ordinance their business either "closed or ceased operating." (Doc. #73-4).

First a word about the competency of Plaintiffs' evidence. In renewing their constitutional challenge on the issue of licensing fees, Plaintiffs rely on hearsay evidence as the primary basis for asserting that Kenton County's ordinance deters protected First Amendment expression. (Doc. #73-4). Plaintiffs' reliance on such evidence is misplaced. See Alexander v. CareSource, 576 F.3d 551, 558 (6th Cir. 2009) (in opposing a Rule 56 motion, a party must rely upon evidence that would be admissible). Plaintiffs fail to explain why the adult business owners who closed down after the Ordinance was enacted were not deposed, or at the very least, asked to sign and submit an affidavit to this Court for review. Instead, this Court is asked to accept and rely upon the statements of a current business owner that others have closed their doors as a result of the County's licensing fee. This Court simply cannot rely on hearsay evidence as a basis to uphold the constitutional challenge brought by Plaintiffs.

Even if this Court were to rely on Mr. Lagory's affidavit, the evidence presented is insufficient to conclude that the County's total licensing fee deters First Amendment expression. Mr. Lagory asserted that it was his understanding that the $3,000 licensing fee was only "one factor that went into the analysis of whether to stay open or to close." (Doc.

#73-4). Thus, the question of whether the licensing fee was a determining factor or simply one factor among many is unanswered. For instance, one factor businesses likely considered was the sharp decline in patrons' willingness to frequent adult cabarets given the current economic environment. A licensing fee that merely factors into an adult business owner's assessment of whether to stay open can hardly be said to chill First Amendment expression without first knowing how decisive the fee was in deterring the protected activity. For all of these reasons, this Court concludes that the total amount of Kenton County's licensing fee does not deter the exercise of rights under the First Amendment and as such is constitutionally permissible.

## CONCLUSION

Accordingly, this Court finds that Kenton County's $3,000 licensing fee imposed on adult business does not deter the exercise of First Amendment rights, the measures associated with this amount are narrowly tailored to advance the County's interest in combating negative secondary effects, and the County's cost estimates for those narrowly tailored measures are reasonable such that Kenton County's licensing fee for adult establishments is constitutionally valid.

This is a final and appealable opinion.

This 24th day of September, 2009.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\Opinions\2-04-212-729INCremandMOO.final.wpd